IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOAQUIM NETO

    v.

RUSHMORE LOAN MANAGEMENT
SERVICES, INC., et al.

:
:
:    Civil Action No. DKC 16-1056
:
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this consumer lending case are motions to dismiss filed by Defendant Alba Law Group, P.A. ("Alba") (ECF No. 5) and Defendant Rushmore Loan Management Services, Inc. ("Rushmore") (ECF No. 9). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motions to dismiss will be granted.

**I.  Background[1]**

To purchase his home in 2004, Plaintiff Joaquim Neto ("Plaintiff") agreed to a note and deed of trust with Wells Fargo Bank, N.A. ("Wells Fargo"). (ECF No. 1 ¶ 2). Plaintiff eventually defaulted on his loan, and in 2012 Wells Fargo or its agents initiated foreclosure proceedings in the Circuit Court for Prince George's County, Maryland. (ECF Nos. 1 ¶ 2; 5-3, at

---

[1] The facts outlined here are set forth in the complaint or judicially noticeable court documents. The facts are construed in the light most favorable to Plaintiff.

1).  During the foreclosure proceedings, Wells Fargo assigned the deed of trust to US Bank National Association ("US Bank"). (*Id.* ¶ 3).  According to the complaint, Rushmore became Plaintiff's mortgage servicer as a result of this assignment. (*Id.* ¶ 4).  The complaint is not clear as to when Alba, a law group that specializes in debt collection and litigation, became involved, but, at some point, Alba began working with Rushmore to litigate the foreclosure and debt collection. (*Id.* ¶¶ 66, 78).

After Rushmore became the servicer of his mortgage loan, Plaintiff requested an application for loan modification.  (*Id.* ¶ 19).  Plaintiff's agent then submitted Plaintiff's application and began negotiating for a loan modification with Rushmore. (*Id.* ¶¶ 20-22).  On April 8, 2015, a Rushmore representative called Plaintiff and notified him that his loan modification request had been denied.  (*Id.* ¶ 25).  Plaintiff's agent contacted Rushmore seeking an explanation for the denial of the loan modification application.  (*Id.* ¶¶ 19, 27).  Although Plaintiff had never submitted any bank statements to Rushmore, a Rushmore representative initially told Plaintiff's agent that the loan modification had been denied because of information in his bank statements.  (*Id.* ¶ 29).  The following day, however, Rushmore emailed Plaintiff a copy of a letter denying his request and indicating that his application had been denied

2

because the amount of Plaintiff's "good faith down payment" was insufficient to offer a loan modification. (ECF Nos. 1 ¶ 31; 1-1, at 2).

To prevent a foreclosure sale while he sought loan modification, Plaintiff had filed bankruptcy proceedings in 2013 in the U.S. Bankruptcy Court for the District of Maryland, which led to an automatic stay in the foreclosure proceedings. (ECF No. 1 ¶¶ 20, 39). On June 5, 2015, the bankruptcy court removed the stay in the foreclosure proceedings and allowed Rushmore to move forward toward foreclosure. (*Id.* ¶ 39). On September 15, Rushmore completed the foreclosure sale. (*Id.* ¶ 40).

On October 14, 2015, Plaintiff filed a motion in the foreclosure proceeding to (1) excuse noncompliance with the filing deadline, (2) vacate the sale, and (3) stay or dismiss the foreclosure proceedings (the "Motion to Vacate Sale"). (ECF No. 5-5). In it he raised several purported violations of the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, including failure to provide accurate information under 12 C.F.R. § 1024.40(b)(1), failure to implement proper loss mitigation evaluation policies under section 1024.38(b)(2)(v), violations of the "dual tracking" prohibition in section 1024.41(g), and inadequate denial disclosure under section 1024.41(d). (ECF No. 5-5, at 17, 19, 20, 22). On March 31, 2016, the circuit court denied Plaintiff's motion, finding

that Plaintiff had "fail[ed] to identify any legitimate procedural irregularities" in the foreclosure sale and that there was "no good cause to excuse the untimeliness [because his] motion does not state a valid defense or present meritorious argument." (ECF No. 5-6).

On April 8, 2016, Plaintiff filed the instant action. (ECF No. 1). In his nine claims, he raises the same four violations of RESPA (Counts I-IV); claims for negligence (Count V) and civil conspiracy (Count VI); and violations of the Maryland Consumer Debt Collection Act (Count VII), the Maryland Consumer Protection Act (Count VIII), and the Fair Debt Collection Practices Act (Count IX). (*Id.*). Plaintiff alleges violations by Rushmore in all nine counts, and Alba's participation in, and liability for, Counts VI, VII, and IX. (*Id.*). Alba filed its pending motion to dismiss on May 3. (ECF No. 5). Plaintiff responded May 19 (ECF No. 7), and Alba replied June 3 (ECF No. 8). Rushmore filed its motion to dismiss on July 7. (ECF No. 9). Plaintiff responded to that motion on July 25 (ECF No. 10), and Rushmore replied on August 11 (ECF No. 13).

## II. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Rule 8(a), which requires a

4

"short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in the complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged, but it has not 'show[n] that the pleader is entitled to relief.'"   *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).   Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Id.*

Generally, *pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).   Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims never presented.  *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999).   That is, even when *pro se* litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim.  *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *Forquer v. Schlee*, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (citation and internal quotation marks omitted) ("[E]ven a *pro se* complaint must be dismissed if it does not allege a plausible claim for relief.").

## III. Analysis

### A. Jurisdiction

### 1. Standing

In its reply, Rushmore belatedly challenges Plaintiff's standing in this case by arguing that he is alleging statutory violations without reference to a particularized concrete harm. (ECF No. 13, at 6-7). Plaintiff's complaint specifically states, however, that these violations were part of a "fraudulent denial" of his application for loan modification, and that "but for this fraudulent denial, Plaintiff would have received a modification of his loan and would not have lost the value of his investment in the home made over the eleven year period since 2004," which he estimates to be more than $30,000. (ECF No. 1 ¶ 42). This alleged harm is sufficient to meet the injury requirement under the standing doctrine.

### 2. *Rooker-Feldman*

Defendants next argue that Plaintiff's claims are barred under the *Rooker-Feldman* doctrine. (ECF Nos. 5, at 4-7; 9-1, at 15). Under the *Rooker-Feldman* doctrine, federal courts lack subject matter jurisdiction to sit in appellate review of judicial determinations made in state courts. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). "[J]urisdiction to review such decisions lies exclusively with superior state courts and,

ultimately, the United States Supreme Court." *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997); *see* 28 U.S.C. § 1257(a). Accordingly, *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "Courts have consistently applied the *Rooker-Feldman* doctrine to dismiss claims requesting federal district court review of a state court's eviction and foreclosure proceedings." *Nott v. Bunson*, No. WMN-09-2613, 2009 WL 3271285, at *2 (D.Md. Oct. 9, 2009) (citing *Poydras v. One West Bank*, No. 9-11435, 2009 WL 1427396 (E.D.Mich. May 20, 2009) (collecting cases)); *see also Ogunsula v. Holder*, No. GJH-15-1297, 2015 WL 3892126, at *3 (D.Md. June 22, 2015) ("With respect to Plaintiff's claim regarding the alleged improper foreclosure on and eviction from her home, her claim is not appropriately brought in this Court.").

In recent years, the Supreme Court has sought "to refocus lower courts that had extended the *Rooker-Feldman* doctrine 'far beyond the contours of the *Rooker* and *Feldman* cases . . . .'" *Smalley v. Shapiro & Burson, LLP*, 526 F.App'x 231, 237 (4th Cir. 2013) (unpublished opinion) (quoting *Exxon*, 544 U.S. at 283). The United States Court of Appeals for the Fourth Circuit has

8

since emphasized that preclusion doctrines, not *Rooker-Feldman*,
should be applied unless the state court proceedings were the
cause of the injury. *Thana v. Bd. of License Comm'rs for
Charles Cty., Md.*, 827 F.3d 314, 320 (4th Cir. 2016); *Smalley*,
526 F.App'x at 237 and n.2.  As the Fourth Circuit recently
held:

> [T]he distinction between preclusion
> principles and the *Rooker-Feldman* doctrine
> can sometimes be subtle, but it is
> nonetheless important to maintain.
> Preclusion principles are designed to
> address the tension between two concurrent,
> independent suits that results when the two
> suits address the same subject matter,
> claims, and legal principles.  Whereas the
> *Rooker-Feldman* doctrine, by contrast,
> assesses only whether the process for
> appealing a state court judgment to the
> Supreme Court under 28 U.S.C. § 1257(a) has
> been sidetracked by an action filed in a
> district court specifically to review that
> state court judgment.  Thus, if a plaintiff
> in federal court does not seek review of the
> state court judgment itself but instead
> "presents an independent claim, it is not an
> impediment to the exercise of federal
> jurisdiction that the same or a related
> question was earlier aired between the
> parties in state court."

*Thana*, 827 F.3d at 320 (citations omitted).  Here the relevant
state court judgment is the foreclosure and sale of Plaintiff's
former property.  Although Defendants argue that Plaintiff is
merely mounting a collateral attack on the foreclosure sale,
Plaintiff maintains that "the state court judgment is not the
source of the injury" here; rather, the injury he alleges is

that Defendants "knowingly and intentionally" violated RESPA. (ECF No. 7, at 14).   As discussed above, Plaintiff is not challenging the foreclosure sale, but rather the "fraudulent denial" of his loan modification and the corresponding monetary losses due to the rejection of his loan modification application.  (ECF No. 1 ¶ 42).  Because the harm alleged is distinct from the foreclosure judgment, Plaintiff's claim is not barred under the *Rooker-Feldman* doctrine.

### B.   RESPA Claims

Plaintiff's first four claims are for RESPA violations. RESPA "is a broad remedial statute intended to provide American consumers with more information about the real estate settlement process and protection from 'unnecessarily high settlement charges caused by certain abusive practices.'"  *Farber v. Brock & Scott, LLC*, No. TDC-16-0117, 2016 WL 5867042, at *3 (D.Md. Oct. 6, 2016) (citing 12 U.S.C. § 2601(a)).   RESPA's implementing regulations, also known as "Regulation X," are codified at 12 C.F.R. §§ 1024.1–1024.41.  Plaintiff alleges that Rushmore failed to provide accurate information under Regulation X, section 1024.40(b)(1) (Count I); violated the "dual tracking" prohibition in section 1024.41(g) (Count II); provided inadequate denial disclosures under section 1024.41(d) (Count III); and failed to implement proper loss mitigation evaluation

policies under section 1024.38(b)(2)(v) (Count IV). (ECF No. 1 ¶¶ 43-61).

Defendants argue that *res judicata* applies to Counts I-IV because Plaintiff raised these same issues in the Motion to Vacate Sale in the foreclosure case. (ECF Nos. 5, at 7 n.3; 9-1, at 12-15; 13, at 3-4).[2]   "The doctrine of *res judicata* contemplates, at a minimum, that courts not be required to adjudicate, nor defendants to address, successive actions arising out of the same transaction and asserting breach of the same duty." *Mcghee v. JP Morgan Chase Bank, N.A.*, DKC-12-3072, 2013 WL 4495797, at *4 (D.Md. Aug. 20, 2013) (citing *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 563 (5th Cir. 1983)). The principle of *res judicata* encompasses two concepts: claim preclusion and issue preclusion, or collateral estoppel. *See In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Because

_____

[2]   A court may consider the affirmative defense of *res judicata* and documents from the underlying case on a motion to dismiss. *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) ("Although an affirmative defense such as *res judicata* may be raised under Rule 12(b)(6) only if it clearly appears on the face of the complaint, when entertaining a motion to dismiss on the ground of *res judicata*, a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact."); *Lara v. Suntrust Mortgage Inc.*, No DKC-16-0145, 2016 WL 3753155, at *1 n.1, *6 (D.Md. July 14, 2016) (considering "relevant documentation regarding the Property and the foreclosure proceeding and sale" attached by Defendants to a motion to dismiss to substantiate a claim of *res judicata*); *Green v. Wells Fargo Bank, N.A.*, 927 F.Supp.2d 244, 246 n.2 (D.Md. 2013).

Plaintiff raised his RESPA arguments as defenses rather than counterclaims in the foreclosure case, Defendants' *res judicata* arguments are best viewed under the rubric of issue preclusion, which "bars a party from re-litigating an issue that he or she has already litigated unsuccessfully in another action." *Jones v. HSBC Bank USA, N.A.*, No. RWT-09-2904, 2011 WL 382371, at *3 (D.Md. Feb. 3. 2011) (quoting *Culver v. Md. Ins. Comm'r*, 175 Md.App. 645, 653 (2007)). In Maryland, issue preclusion has four elements: "(1) the issue decided in the prior adjudication must have been identical to the one in the present action; (2) there must have been a final judgment on the merits in the first action; (3) the party against whom the plea is asserted must have been a party to the prior adjudication; and (4) the party against whom the plea is asserted must have been given a fair opportunity to be heard on the issue." *DeCosta v. U.S. Bancorp*, No. DKC 10-0301, 2010 WL 3824224, at *6 (D.Md. Sept. 27, 2010) (citing *Culver*, 175 Md.App. at 657).[3]

Plaintiff does not dispute the first and third elements of issue preclusion. Rather, he admits that the Motion to Vacate Sale was "based upon Defendant Rushmore's failure and refusal to comply with a number of loss mitigation rules and regulations

---

[3] Maryland law applies because "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

which are indeed the subject of the instant action." (ECF No. 7, at 4). He argues instead that the second element of issue preclusion has not been met. Plaintiff contends that the court "denied the motion as an insufficient basis" for excusing his untimeliness, and therefore its decision was based on procedural grounds, not the merits. (*Id.* at 5). He also suggests that he was not given a full and fair opportunity to litigate these claims. (*Id.*).[4]

Although Plaintiff is correct that the court announced its decision "without explanation or elaboration" (*id.*), he is incorrect that the court did not provide him a full and fair opportunity to litigate the issues or that it did not address the merits of his arguments. The court's docket and order show that the motion was fully briefed by the parties; his opponent filed a response and he filed a reply, giving Plaintiff an opportunity to see and respond to his opponents' counter-arguments. (ECF Nos. 5-3, at 3; 5-6 (court's memorandum and

---

[4] Plaintiff applies the *res judicata* standard for claim preclusion to his "full and fair opportunity" arguments. (ECF No. 7, at 5-6). He argues that that he could not have raised these issues as counterclaims in the foreclosure proceedings because he was limited by Maryland Rule 14-211 which prescribes the limited means in which a borrower may challenge a foreclosure proceeding. The doctrine of issue preclusion does not require that the duplicated legal issues be claims or counterclaims, as the doctrine of claim preclusion does, so these arguments are inapplicable here. Rule 14-211 did not prevent Plaintiff from making the same RESPA arguments in his Motion to Vacate Sale as he does here.

order)).   When the circuit court ruled on the motion, it specifically stated that Plaintiff had "fail[ed] to identify any *legitimate* procedural irregularity regarding the September 18, 2015 foreclosure sale."   (*Id.*).   More importantly, in determining that there was no excuse for Plaintiff's untimeliness, the circuit court found that his motion did not "state a valid defense or present meritorious argument." (*Id.*). Plaintiff attempts to overcome these findings by arguing that the circuit court's determination that his arguments were not meritorious "is not to say that the underlying facts presented in support thereof were not meritorious or true." (ECF No. 7, at 15).   Plaintiff's hair-splitting reference to the underlying facts does not affect the applicability of issue preclusion here to avoid the relitigation of the same legal issues "in successive actions arising out of the same transaction and asserting breach of the same duty."   The state court appears to have considered the merits of Plaintiff's arguments, even if it did not elaborate as to why it found them meritless.[5]

---

[5] At least some of Plaintiff's arguments would have been rejected because, *inter alia*, no private cause of action exists for the RESPA violations he alleged.   *See Agomuoh v. PNC Financial Services Group*, No. GJH-16-1939, 2017 WL 657428, at *10 (D.Md. Feb. 16, 2017) (finding that no private cause of action existed under § 1024.38 and § 1024.40 and citing cases). *See generally Schmidt v. Pennymac Loan Services, LLC*, 106 F.Supp.3d 859, 867-71 (E.D.Mich. 2015) (describing the RESPA statute in the U.S. Code and the recent history of Regulation X).

Accordingly, *res judicata* applies to Plaintiff's RESPA claims, and they will be dismissed.

### C.   Plaintiff's Other RESPA-Based Claims

Several of Plaintiff's other claims rely on the underlying RESPA violations as a foundation.  Because these claims cannot proceed in the face of the state court's ruling on Plaintiff's Motion to Vacate Sale, these claims will also be dismissed.

### 1.   Negligence

Plaintiff's negligence claim in Count V is premised on the fact that Rushmore had a duty to comply with the requirements of RESPA and breached that duty.  Because this duty and breach are the same alleged statutory violations that the state court rejected as lacking merit in Plaintiff's Motion to Vacate Sale, issue preclusion similarly dictates that this claim fails.

### 2.   Conspiracy

In Count VI, Plaintiff alleges that Alba and Rushmore conspired together to obtain Plaintiff's property via foreclosure.  (ECF No. 1 ¶ 66).  A claim of civil conspiracy requires Plaintiff to allege: "1) A confederation of two or more persons by agreement or understanding; 2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and 3) actual legal damage resulting to the plaintiff." *Windesheim v. Larocca*, 443 Md. 312, 347 (2015).  "Conspiracy is

not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Haley v. Corcoran*, 659 F.Supp.2d 714, 726 (D.Md. 2009) (citing *Alleco Inc. v. The Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 189 (1995)).  Plaintiff alleges that Rushmore and Alba were aware of Rushmore's RESPA violations and pursued the foreclosure despite that knowledge.  (ECF No. 1 ¶¶ 67-68).  Because Plaintiff's conspiracy claim is premised on the "intentional negligence" described in Count V (*id.* ¶ 65), there is no foundational tort to support an allegation of civil conspiracy.  *See Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 247 F.Supp.2d 773, 777 (D.Md. 2003) (holding that because "plaintiff has failed to state a claim for any substantive torts, his state law claim for civil conspiracy must fail.").  Accordingly, this claim will be dismissed as well.

### 3.   FDCPA

The Fair Debt Collection Practices Act ("FDCPA") protects consumers from debt collectors that engage in abusive and deceptive debt collection practices.  *See United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996).  Plaintiff alleges that Defendants violated the FDCPA by proceeding to a foreclosure sale when they were prohibited from doing so because of the purported RESPA violations.  (ECF No. 1 ¶ 79).  The state court's determination that Plaintiff's RESPA arguments lacked

merit therefore precludes him from succeeding on this claim, and it will be dismissed.

   **D.   MCDCA and MCPA**

Finally, Plaintiff alleges claims under the Maryland Consumer Debt Collection Act ("MCDCA") and the Maryland Consumer Protection Act ("MCPA").   (ECF No. 1 ¶¶ 69-74).   The MCDCA provides that in collecting or attempting to collect an alleged debt, a collector may not engage in various activities, including "claim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist."   Md.Code Ann., Commercial Law § 14-202(8).   To plead a claim under the MCDCA, a plaintiff must allege show that: (1) that Defendants did not possess the right to collect the amount of debt sought; and (2) that Defendants attempted to collect the debt knowing that they lacked the right to do so.   *See Pugh v. Corelogic Credco, LLC*, No. DKC 13-1602, 2013 WL 5655705, at *4 (D.Md. Oct. 16, 2013).   Courts have held that, even where there might have been procedural defects committed under the applicable statutes and regulations, initiating foreclosure proceedings is not a violation of the MCDCA where it is undisputed that the borrower has defaulted on the loan. *Agomuoh*, 2017 WL 657428, at *11 (dismissing MCDCA claim because plaintiffs were "undeniably in default"); *Currie v. Wells Fargo Bank, N.A.*, 950 F.Supp.2d 788, 802 (D.Md. 2013); *Marchese v. JPMorgan Chase Bank, N.A.*, 917

17

F.Supp.2d 452, 464 (D.Md. 2013) (holding that MCDCA does not allow "recovery based on errors or disputes in the process or procedure of collecting legitimate, undisputed debts"); *Stovall v. SunTrust Mortg., Inc.*, RDB-10-2836, 2011 WL 4402680, at *9 (D.Md. Sept. 20, 2011). Plaintiff acknowledges that he defaulted on his loan. (ECF No. 1 ¶ 2). He therefore fails to state a claim under the MCDCA.

The MCPA establishes that the violation of several other enumerated Maryland statutes, including the MCDCA, constitutes unfair or deceptive trade practices proscribed by the MCPA. *See generally* Md.Code Ann., Commercial Law § 13-301(14) (enumerating incorporated statutes). Plaintiff's MCPA claim was based on the alleged MCDCA violation described above. Because he has not properly pleaded an MCDCA violation, his MCPA claim premised on an MCDCA violation will also be dismissed.

## IV.  Conclusion

For the foregoing reasons, the motions to dismiss filed by Defendant Alba and Defendant Rushmore will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge